UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUNIOUS L. BLACKWELL,<br><br>          Plaintiff,<br><br>     v.<br><br>BONAMARE NAVIGATION LTD.,<br><br>          Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 08-2900<br>          (JEI/KMW)<br><br>**OPINION** |

**APPEARANCES:**

FREEDMAN AND LORRY, P.C.
By: Stanley B. Gruber, Esq.
1601 Market Street
2nd Floor
Philadelphia, PA 19103
          Counsel for Plaintiff

RAWLE & HENDERSON, LLP
By: Kevin L. McGee, Esq.
401 Route 73 North
Suite 200
Marlton, NJ 08053
          Counsel for Defendant

**IRENAS**, Senior District Judge:

Plaintiff, Junious L. Backwell, brings this suit against the Defendant Bonamare Navigation Ltd. arising out injuries he sustained while unloading cargo from the M/V Faldesia, a ship owned by Defendant.  Plaintiff claims negligence on the part of Defendant under Section 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. 901 et seq.

Defendant's motion for summary judgment is before the Court.[1]

**I.**

At the time of his injury, Plaintiff was a longshoreman
working for Delaware River Stevedores ("DRS"). (Defendant's
Memorandum of Law p. 2)  DRS provides stevedoring services at the
Beckett Street Terminal in Camden, New Jersey. (*Id.*)

The M/V Faldesia was loaded with steel cargo in Belgium and
Camden was its first discharge port of call. (*Id.* at 6)  The M/V
Faldesia has five cargo hatches, each with two access ladders,
one located at the aft end of the hatch (towards the rear of the
ship) and one located at the forward end of the hatch. (*Id.* at 5)
The ladders are accessed by crosswalks running across the ship
between the hatches. (*Id.*)  Dunnage[2] was used to stow the steel
cargo, both on the lids of the hatches and in the hatches
themselves. (*Id.* at 6-7)

The M/V Faldesia arrived in Camden on May 19, 2007, and
stevedoring operations began that day. (*Id.* at 8) Plaintiff's
first day of work on the M/V Faldesia was May 20, 2007. (*Id.*)
At 10:30 a.m. on that day, Plaintiff and the other longshoremen
began unloading cargo from the No. 4 hatch. (*Id.*)  When the

---

[1]The Court has subject matter jurisdiction pursuant to 28
U.S.C. § 1332.

[2]"Dunnage" is "[a]nything, esp. pieces of wood, that is put
underneath or between cargo on a vessel to prevent the cargo from
bruising or getting wet from water leaking into the hold."
Black's Law Dictionary (8th ed. 2004).

longshoremen first began stevedoring operations in the No. 4 hatch, there was some dunnage in the crosswalk area between the No. 3. and No. 4 hatches, but it did not obstruct access to the forward ladder. (*Id.* at 8)

The longshoremen broke for lunch at 11:45 a.m. and exited using the forward ladder of the No. 4 hatch.  The longshoremen were able to exit using the crosswalk without obstruction.  (*Id.* at 9) When the longshoremen reconvened at 12:55 p.m. to resume discharge operations, dunnage was completely blocking the crosswalks between the No. 3 and No. 4 hatches and access to the ladder was impeded. (*Id.* at 9-10)[3]

Despite the fact that dunnage was blocking the crosswalk, the longshoremen began to climb over the dunnage in order to access the forward ladder.  (*Id.* at 10)  At least one longshoreman was able to safely traverse the dunnage.  (*Id.* at 11*)*  When Plaintiff attempted to cross, the dunnage collapsed under his feet, throwing him under other dunnage which in turn collapsed on him.  (*Id.*)  This collapse led to Plaintiff's injuries which are the subject of the instant suit.

Plaintiff filed his original Complaint in this action on

---

[3]The access ladder between the No. 4 hatch and the No. 5 hatch was similarly impeded by dunnage.  The cargo was also stored in such a way that it was not safe for the longshoreman to access the cargo from the aft end of the hatch.  (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Pl's Opp.) p. 8)

June 11, 2008, and filed his Amended Complaint on July 23, 2008.
Defendant filed its Motion for Summary Judgment on March 31,
2010.

## II.

"[S]ummary judgment is proper 'if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law.'" *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.
56(c)).  In deciding a motion for summary judgment, the Court
must construe the facts and inferences in a light most favorable
to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*,
794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on
which the non-moving party bears the burden of proof, the burden
on the moving party may be discharged by 'showing'– that is,
pointing out to the district court – that there is an absence of
evidence to support the nonmoving party's case.'" *Conoshenti v.
Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004)
(quoting *Celotex*).  The role of the Court is not "to weigh the
evidence and determine the truth of the matter, but to determine
whether there is a genuine issue for trial." *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 249 (1986).

4

**III.**

Section 905(b), which was adopted as part of the 1972 amendments to the LHWCA, preserved the longstanding right of longshoremen to pursue negligence claims against vessels.[4]  *See Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 165 (1981).[5]  The Supreme Court has identified three circumstances in which vessel owners have responsibilities to longshoremen who work for independent stevedores. *See Scindia*, 451 U.S. at 156 (1981). These duties are: (1) the "turnover duty," (2) the "active control" duty, and (3) the "duty to intervene." *Howlett v. Birkdale Shipping Co., 512 U.S. 92*, 98 (1994).

The turnover duty concerns the state of the vessel when the stevedoring operations commence. *Id.*  "The shipowner thus has a duty with respect to the condition of the ship's gear, equipment, tools, and work space to be used in the stevedoring operations." *Scindia*, 451 U.S. at 166-67.  The active control duty requires that, after ship operations commence, vessel owners "exercise

_____

[4]Section 905(b) provides in relevant part: "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party . . . ." 33 U.S.C. § 905(b).

[5]The LHWCA also establishes a comprehensive worker's compensation scheme which is the exclusive means of liability of employers to employees injured in the course of their maritime employment. 33 U.S.C. § 905(a); *see also Morehead*, 97 F.3d at 607.  Longshoremen are typically employed by stevedores and not by the vessels themselves, so there is no employer-employee relationship.

5

reasonable care to prevent injuries to longshoremen" in those parts of the ship which remain in the "active control of the vessel." *Howlett*, 512 U.S. at 98.  Finally, the intervention duty requires that, if new conditions arise during cargo operations, the vessel owner may be required to intervene and correct them. *Id.*

Plaintiff argues that Defendant violated the turnover duty, the active control duty and the intervention duty.  The Court concludes that Defendant was not subject to the turnover duty because the duty only applies prior to the commencement of stevedoring operations.[6]  While Defendant was subject to the intervention duty, it is clear that Plaintiff has failed to

---

[6]The turnover duty expires at the time of commencement of stevedoring operations. *Howlett*, 512 U.S. at 98.  Plaintiff does not contend that any negligence on the part of Defendant occurred prior to the commencement of stevedoring operations.  Plaintiff nonetheless urges the Court to expand the turnover duty to apply in every instance in which longshoreman break from their operations because the vessel has an opportunity to alter its conditions.  (Pl.'s Opp. 34)  The Court will not expand the turnover duty because *Scindia* specifically contemplates that the active control duty will apply in such situations. The purpose of this demarcation is to allow a vessel to reasonably rely on the expertise of the stevedore.  *See Scindia*, 451 U.S. at 167-68. Requiring the vessel to be responsible for its equipment and conditions after every break by the longshoreman would prevent a vessel from relying on the stevedore, force the vessel to oversee the entirety of stevedoring operations and greatly upset the liability scheme of *Scindia*.  *Id.*

establish his prima facie claim of violation of this duty.[7]  The only remaining duty to be analyzed is the active control duty.

The active control duty applies when the vessel actively controls or is in charge of "(i) the area in which the hazard existed, (ii) the instrumentality which caused the injury, or (iii) the specific activities the stevedore undertook." *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 540 (3d Cir. 1994).  Active control by the vessel can be found either when it never turned over exclusive control to the stevedore, or because the vessel "substantially interfered, by invitation or otherwise, with the stevedore's exercise of exclusive control, such as by actively intervening in the area."  *Id.* at 541. Active control does not necessarily have to be contemporaneous with the accident, so long as the vessel asserted control over after the commencement of stevedoring operations.  *Id.*

Once active control is established, the plaintiff must establish a prima facie case that the vessel breached the active control duty.  To establish a prima facie case for violation of the active control duty, a plaintiff must show:

---

[7]The duty to intervene is applicable when "the vessel had actual knowledge of a dangerous condition and reason to believe that the stevedore will not remedy it." *Goldsmith v. Swan Reefer A.S.*, 173 Fed. Appx. 983, 986 (3d Cir. 2006).  Plaintiff has not adduced evidence that Defendant had reason to believe that the stevedore would not remedy the situation.  In fact, workplace regulations require the stevedore to both remedy such situations, 29 C.F.R. § 1918.33(a), and ensure that work areas are free of equipment and debris, 29 C.F.R. § 1918.91(a).

(1) that the vessel appreciated, should have appreciated, or with the exercise of reasonable care would have appreciated, the condition; (2) that the vessel knew, or should have known, that the condition posed an unreasonable risk of harm to a longshore worker; (3) that a longshore worker foreseeably might fail to (i) either discover the condition or apprehend the gravity and probability of harm, or (ii) protect himself or herself against the danger; and (4) that the vessel failed to take reasonable precautionary or remedial steps to prevent or eliminate the dangerous condition.

*Davis*, 16 F.3d at 541.

Plaintiff has presented evidence that establishes that the M/V Faldesia retained active control of the area of the ship where Plaintiff was injured and that satisfies each element of his prima facie claim.

Plaintiff was injured because he fell while climbing dunnage that was on a crosswalk.  Plaintiff has presented evidence that an officer of the M/V Faldesia ordered the crew to handle the dunnage and that all dunnage aboard the M/V Faldesia was in fact exclusively handled by members of the crew and not DRS. (Paderayon Dep. 13)  Taken in the light most favorable to Plaintiff, this would indicate that M/V Faldesia retained active control over the area in which Plaintiff was injured by the dunnage.

Because crew members of the M/V Faldesia created the hazard, it can also be reasonably inferred that the M/V Faldesia knew about and appreciated the hazard.

A reasonable factfinder could find that dunnage on a

8

crosswalk which blocks access to a cargo hold poses an unreasonable risk to a longshoreman trying to access that cargo hold.

A factfinder could also reasonably infer that it was reasonably foreseeable that Plaintiff might fail to protect himself from the hazard: there was an order that dunnage was not to be taken off the ship, (Paderayon Dep. at 13), there was no space available on the ship to put the dunnage, (*Id.* at 75-76), and it was not possible to use the ship's equipment to move the dunnage, (*Id.* at 82-83)[8]

Finally, there is no evidence that the M/V Faldesia tried to take precautionary or mitigating steps towards eliminating the risks the dunnage created.

The Plaintiff has presented evidence, taken in the light most favorable to him, that the M/V Faldesia had active control over the area where the injury occurred and failed to satisfy its active control duty.

_____

[8]This element is really a measure of the obviousness and the avoidability of the hazard. *See Serbin v. Board Corp.*, 96 F.3d 66, 73 (3d Cir. 1996). The Third Circuit has generally found these to be issues for the factfinder. *Id.* The Third Circuit has clarified that the "standard is not whether it was absolutely impossible to avoid the hazard, but whether, under all the circumstances, safer alternatives were practical." *Kirsch v. Plovidba*, 971 F.2d 1026, 1030 (3d Cir. 1992). This is a fact intensive inquire that in most cases "will be inappropriate to decide on summary judgment...." *Id.*

**IV.**

For the reasons set forth above, Defendant's Motion for Summary Judgment will be denied.  An appropriate Order accompanies this Opinion.


Dated: October 12, 2010

s/ Joseph E. Irenas
**JOSEPH E. IRENAS, S.U.S.D.J.**
